23-1890 Fidel Angel Lopez-Quinteros, et al. v. Merrick B. Garland Good morning and may it please the Court, my name is Christian Meyer on behalf of Petitioners. If I may, I would reserve three minutes for rebuttal. So Petitioners' petition for review was broad, challenging the Board of Immigration Appeals' affirmance of the, specifically the immigration judge's nexus findings, finding that those were dispositive, they did not reach any further findings. Petitioners' challenge raises two major issues, the first being that significant instances of indiscernible language of both the attorneys as well as petitioners that occurred in the hearing transcript render meaningful appellate review pretty much impossible. And you agree that wasn't raised to the BIA? Yes, but I would note that inherent in that challenge is that the Board failed to adhere to its own precedent. So the Board, by their own practice manual, provides that published decisions constitute precedent that binds the Board. That's their practice manual rule 1.4DI. Now, they have issued precedent that is specifically in relation to instances of indiscernible testimony in transcripts. That's a matter of Cogumbas 28INN Decision 400. Now, the Board in that decision notes that a transcript doesn't need to be perfect, but what it does need to be is complete enough for meaningful appellate review. Such was not the case here. Now, I would also note that... Was it not the case with respect to the nexus issue? In other words, the BIA didn't arrest its decision, at least with respect to Mr. Lopez, on there being no nexus between the persecution and being a business owner. Rather, they were going after the money. Yes, but as this Court... So did the defects in the transcript affect that determination? Yes, they affect whether or not the immigration judge erred in holding that there was no nexus to business ownership, as well as the female petitioner's arguments that there was a nexus to a fear of future persecution based on her status. On the first, I'm not quite seeing it. It seems almost an abstract issue that you don't need much of a transcript for. The alleged group is business owners, and no one is saying that you didn't have evidence that he was targeted. It's just a question by the BIA saying there's no evidence at all, and there's no claim that the garbled stuff would have provided it, that they were going after business owners, qua business owners, as opposed to money. Well, the business ownership is intrinsically linked to... But even if that's so, how does that relate to the transcript defect? Is there a passage in the transcript that plausibly could be said to contain something that would bear on the nexus issue as to business owners? Yes, I believe so. So I would point the Court to there's numerous instances of indiscernible, both from the questions where we can't determine the question... And do they occur in context of discussions that plausibly could be understood to relate to the nexus question? That's correct. So Administrative Record 100 through 103 is the mail petitioner. And, for example, just a quick passage. This is Administrative Record 100, counsel to Mr. López-Conteros. How would someone indiscernible, Mr. López-Conteros to counsel, either they indiscernible or they come to the point where we were an indiscernible counsel to López-Conteros. How would somebody indiscernible, López-Conteros to counsel, indiscernible? It's impossible from meaningful appellate review to determine. We have no way of knowing what's contained in this testimony. What do we... If I understand from your brief, the only authority you cite for overcoming the exhaustion problem is Elano, which doesn't do it. Well, I would note that... Inherent in that argument is the board failed to adhere to its own precedent. Why don't you have to exhaust that? Because that's incapable of being raised absent a board decision. Now, could counsel have raised this in a motion to reconsider? Absolutely. But the Supreme Court has held in... But even before reconsider, if the petitioner or counsel thought there was some evidence in the record that hadn't been properly transcribed, suppose the petitioner was asked a question and he said yes and the transcript says no. Don't you need to raise that when the transcript goes to the BIA rather than say nothing and then after the BIA decides the case? I believe that yes, it could have been raised. But notwithstanding, the board is still obligated to adhere to its own precedent. The board's obligated to all the things that if you objected to, it would be error if it didn't do them. That's no different. That's what exhaustion's about. The whole idea of exhaustion is that precisely because they're obligated, by telling them about it, they then will do the right thing. And if you don't exhaust it, then we can't do much about it because there was an opportunity for the BIA to correct, but it wasn't given that chance. The claim certainly could have been raised. However, even if this claim is exhausted, can this court meaningfully review whether the nexus determination was supported by substantial evidence? I see the point. The record, we have absolutely no way of knowing. And further, petitioners, their additional challenge is that the record that we do have, which as we've noted, has serious issues. But if what you're saying is correct, then every time there's a transcript error, what counsel for petitioner does is say nothing. Don't point out. Don't object. Try to win at the BIA. If you win, you go home. The government's not going to appeal based on the transcript error. But if you lose, then get out a jail-free card and start all over again. If that's what you're saying, we should set up the procedure that way. I just believe that this court has held in Sohoming v. Holder that the absence of information from the transcript is not prejudicial, if it could be reasonably recreated by the complaining party. That's not the case here. We don't know the questions that were being asked, the responses that were being asked. Well, you're saying there's got to be some outer limit on exhaustion. Because if it was, let's say, a blank transcript. Absolutely. You had a terrible lawyer. But see, one, I mean, I don't mean to cast versions on any lawyer. But there is an ineffective assistance claim that can be brought in a motion to reopen. And I just don't, I mean, imagine a case you have the blank transcript. Lawyer doesn't say anything about it. BIA rubber stamps the IJ. And then you come up and say, well, that's ridiculous. You can't have the, there's nothing for us to review whether the BIA got it right. Because there's no transcript at all. And I suppose you'd say at that point, it's kind of strange for us to say, well, you didn't exhaust it. So we just have to affirm the BIA. And you're saying if it's clear enough that the gaps in the transcript go to the exact issue that's here, how can we review whether the BIA got it right? Because we've got to look and see what the record says. But then the record, when we look at it, it's blank. I don't know what to do. But I see the point. And I would just note, I understand the court's concern in opening, you know, these kinds of issues. But ultimately it comes down to, like I said, the board has to be able to adhere to its own policies, whether or not they're raised in just the interest of fundamental fairness. And here the significant issues, while they could have been raised, the BIA alone has in previous decisions exercised their own sua sponte authority to correct these issues. And they should have in this case. So you're saying any time there's any transcription error, the BIA has to do something about it? No, I'm not. And so who's in the best position to tell the BIA whether the particular error in a particular case might make a difference? Well, I believe the BIA does have its own, you know, ability to review the transcripts. But I believe that it is also necessary for, you know, the circuit courts to look at these transcripts and specifically where it goes. The issue here, they found nexus to be dispositive. So if there's testimony that relates to that nexus, there's no way for them to support their decision with substantial evidence if a reviewing body cannot determine that. Could you give an example? Imagine you get to fill in the blanks in the transcript however you want, best possible case. What would it say that would make the nexus ruling improper? So in terms of, I guess. The business element. Statements of fact in relation to that. So what I would note is that the board has found that nexus determinations in relation to gang persecution against different segments of society where one segment of society is equally persecuted, there's no nexus finding. But they have found where there is a more substantial risk of persecution that can support a nexus. The record that we do have in terms of the supporting evidence is clear that business ownership is, there is a substantially larger risk of being targeted. So. I'm not hearing. You pointed to some portions of the transcript where it says garbled or something like that. Yes. I'm inviting you to fill in where it says garbled, whatever you'd like it to say, and then explain how that means the transcript, the nexus finding is an error. Yes. Okay. So say, for example, counsel asks, what did the gang want with your business? And the petitioner responds, they wanted to launder money through my business. That takes the claim away from just a strictly financial basis to there is a business entity that exists that, yes, it's related to their financial motivations, but it's not incidental. It's not subordinate. They are specifically targeting business owners because there exists a pre-made avenue to launder their criminal proceeds. So that is also, that's not just, you know, testimony that we would have liked to have seen or anything like that. That's also noted in the record in the supporting evidence. There are. There's a certain artificiality here maybe because the particular social group we're talking about, there's a question whether it is one if it's a present business owner because you could change the condition, but I just, I take it the way the case is coming to us, the BIA only relied on nexus. Exactly. Not on whether it's. And they didn't address petitioner's arguments before them that, you know, business owners actually do share common immutable traits. Are you making the same argument with respect to the family status as to the other petitioner? Yes. The transcript is garbled in the relevant respect or not? Yes. I believe that's less of a substantial issue, and I believe that the record also supports not necessarily to the past persecution, but to a well-founded for a future persecution. It certainly compels. Why not as to past persecution? What's that? Why not as to past persecution? Because there weren't sufficient threats? No, I believe the threats were sufficient, but I think that the targeting and the initial targeting of the past persecution appropriating the business that threats made to the male respondent were more, the record more supportive of business ownership. She never got a direct threat. I believe she overheard maybe voicemail messages or text messages that said, you know, comply with our demands or we're going to, you know, kill. But she was never directly threatened is the point? By the members. I don't believe so. I see. So that's why for her well-founded for a future persecution is a stronger argument. And the record does show that the gangs commonly target dissidents, including their families. So that would be the argument that petitioners are raising. And there's nothing in the record indicating they had any connection to her, apart from the knowledge that she had what you're calling a familiar relationship to the business owner. Is that right? Yes, that's correct. But independently, there's also the nexus plays into whether or not, or that nexus determination goes into whether or not there's a pattern of practice of targeting, you know, Thank you. Thank you, Counsel. At this time, Counsel for the Respondent, please introduce yourself on the record to begin. Good morning, Your Honors. My name is Kristen Blosser. I'm here on behalf of the Respondent. May it please the Court. The Court should deny the petition for review in this case. Substantial evidence supports the agency's determination that they failed to meet their burden of proof for asylum and withholding of removal. And specifically, the record does not compel reversal of the agency's conclusion that they failed to demonstrate a nexus between the harm that they suffered or feared and a protected ground. And the protected grounds that they alleged were business owner, members of the Lopez family, and Salvadoran women. That nexus determination is dispositive and is the sole issue in this case. Before I begin with nexus, I'd just like to briefly respond to my colleague's points with respect to the indiscernibles in the transcript. As the government argued in our answering brief, this argument was never exhausted to the Board. Petitioners did not raise it, and so this Court need not address it and, in fact, should not address it. How does that work practically? So one thing we're supposed to ask is, is there substantial evidence to support its finding of no nexus? And then suppose the transcript is from the hearing, the victim. They say, okay, I'm now going to ask you some questions about nexus. What did they say to you about why they were targeting you? And it says indiscernible. What am I supposed to do? Well, Your Honor, I think what this Court has said in cases like Sihombing and Oro was that in situations where the indiscernible portions could have reasonably been recreated by counsel, there is no prejudice. And in Oro, the Court determined or the Court noted that it was one of the most important things that they were looking at was the fact that those missing portions could have been recreated. Counsel representing petitioners in that case was the same counsel that had previously represented them. We have that same situation here. Counsel has represented petitioners all throughout proceedings and before this Court. The portions that are indiscernible in the record are from that testimony that was elicited by counsel from his client. And I would also note that... That's correct, Your Honor, and they've made no effort to do that here. So that's why in the alternative, even if the Court should reach the issue, they have not demonstrated prejudice. And I would also note that in addition to the testimony, petitioners, both the male and female petitioners, submitted lengthy, very detailed written declarations summarizing the facts of their claim. And so I do think there is the possibility of putting the transcript from that hearing up side by side with those declarations and piecing things together. So I do think, you know, even if... Even going down that sort of road or line of reasoning, there is even more that we have here to recreate. And petitioners have made no effort to do so. Well, who has the burden of proof here on nexus? The... With respect to the standard of review in this Court, it would be... Well, no, in a case like this, doesn't the petitioner have the burden of establishing nexus? That's correct. So we don't actually review a BIA decision. We don't actually ask, is there substantial evidence to find no nexus? We ask, is there substantial evidence that would cause us to question the BIA's determination that the petitioner has not proven nexus? Well, we would ask, is there substantial evidence to support the agency's determination that nexus was not met? That the petitioner didn't meet their burden of showing nexus. That's correct, Your Honor. And so that then kind of goes into the government's arguments with respect to nexus on the merits. But the fact that the burdens on petitioner would be consistent with the practice of if it was susceptible of being easily recreated. Yes, Your Honor, I believe so. So it may be a different case if the key witness who was being asked about nexus was somebody who would be not easily available or something like that to recreate the declaration. But I take it here the questions all go to the petitioner himself. Yes, Your Honor, I think so. So then turning to the issue of nexus itself, with respect to nexus, the critical inquiry is what motivated the alleged persecutors. Here, the gang members who threatened and extorted Mr. Lopez-Quinteros. And the answer in this case is straightforward. We know that they were motivated by a desire for money and a desire to expand their criminal enterprise. And we know this because petitioners have told us as much in their written applications, their written declarations. But Pineda, it was clear they wanted money. In Pineda-Maldonado, Your Honor? Yes. Well, I think that Pineda-Maldonado is distinguishable from the case that's presented to the court here. How is it with respect to the family question and the petitioner, the female petitioner? Right. I mean, with respect to the female petitioner's family claim, I think it is meaningfully distinguishable because her family membership was incidental, tangential, superficial, or subordinate to an unprotected ground that the gangs desire for money. How do we know that? Ms. Lopez-Quinteros was never targeted by gang members at all. The only reason that we are talking about her in respect to this claim is because Mr. Lopez-Quinteros, her boyfriend, her partner, received, after he had for a lengthy period of time been paying the gangs monthly extortion rent demands, he was then asked for a greater sum of money that he wasn't able to pay. When he was not able to pay that money, he received text messages that told him if he didn't pay, they would harm his partner the way that they wanted to harm him. Why would they choose to harm her? Part of it would be they want money, but the reason they would choose her is because of her family status, right? Well, Your Honor, I think that they threatened to harm her for the same reason that they might threaten to harm his lifelong best friend or his business partner or, you know, his roommate. In other words, just because she was close to him in some way? Exactly. This was a threat that was intended as, I mean, this is a strategy. This is a tactic commonly used by criminal actors in order to place additional pressure on their intended victim and get at what it is that they ultimately desire, in this case, the money. And the record, petitioners don't point to anything in the record. What did they refer to her as in the text message or the voicemail? I believe... Did they refer to the child? I'm not sure that they referred to the child specifically. I think at times they referred to his family, which would include the child. I'm not saying that it doesn't. It's not as if they just said, name of person, she's really close to you, we know she means a lot to you. They're saying we're going to go after your family. I don't think it changes the analysis, though, Your Honor, because at the end of the day, it really is about this trying to find some sort of soft underbelly that's really going to get in with the petitioner to exert additional pressure, get at what they ultimately want. Every incident, and this is every incident that Mr. Lopez-Quinteros had with these individuals, it always came back to that common thread throughout the heart of this case of their desire for money. And this Court has said that with respect to family-based claims... Let me just take the logic of that in that you say, let's say they're pressuring a rabbi, and then they say, well, we're going to extort you. And then he says, I'm not going to pay you. And they say, well, we're going to kill some Jews then. Then you say, well, that's just for the money. That person who's targeted is the Jewish person. It's not on the basis of their religion. It's just based on the money. It's subordinate to that. Is that the position? Well, Your Honor, I think these kinds of issues, the issue of nexus, is very fact-specific. So it would depend on what the record in that case showed. I think it's possible that it could be incidental. So what's missing here, I guess? In other words, since there is a reference for the future persecution, since there is a reference to family, what's, from the government's perspective, what's not evident enough to support the idea that the burden was met? I think what the issue here is that we're looking at this pattern of multiple attacks where the primary target was Mr. Lopez Quinteros. Well, suppose he paid them everything they wanted so they were happy and they went away. She's still part of the family, isn't she? Yes, Your Honor. And they're not going after her because they've got this. Doesn't that, the whole nature of this transaction for both of the plaintiffs, both of the petitioners show that what's driving and motivating the persecution is the desire to get the money. That's correct, Your Honor. But is that consistent with Pineda, that logic? Why? Because I thought in Pineda they went after him for the debt, and the debt was tied to him. And this was, Pineda was what other circuits have come to a similar type of conclusion when there's a financial motive. But the reason for the person being singled out is not anything that's explicable other than their familial tie to the person. That's why they got singled out. Even though the ultimate object is money, that's because it just has to be a central reason, not the central reason. If I may respond. I think the difference factually between this case and Pineda-Maldonado really comes down to the fact that in Pineda-Maldonado, two of the things that the court considered were significant there was the fact that that applicant had been, he'd received directly threats from these individuals. He'd also been attacked on multiple occasions. That just relates to the fact that it was past persecution as opposed to future persecution, which is the idea here. It doesn't relate to nexus. Well, I think past persecution can be relevant to future persecution because it can give an indicator of what is likely to happen again in the future. The other factual distinction between that case and this is the court referenced how Pineda-Maldonado's brother was also targeted by those individuals, indicating that. But solely for purposes of collecting the debt. But the court said that in that case, the debt and family membership were inextricably intertwined and said that the reason that they thought that Mr. Pineda-Maldonado should be responsible for that debt was by virtue of his family membership. And that's the reason this person should be threatened is by virtue of their family membership. The object is to get the money. The reason this person is being singled out is explicable only by the family relationship. And one way we know that is because they say we're going to go after your family. I mean, that's the argument, at least. But I think the difference here, again, is that it's incidental or subordinate tangential to that ultimate motive. In Pineda-Maldonado, it wasn't incidental, superficial, tangential, subordinate. Here it is. That's the government's position. And that's the difference between these two cases and why a different result should obtain. Unless the court has any further questions, we would rest on our brief. Thank you. Thank you. At this time, counsel for the petitioner, you have a rebuttal, three minutes. Christian Meyer for the petitioners. So as this court noted in Pineda-Maldonado, the familial membership was not really deemed incidental or tangential. Such is the case here from the record that we have. Like Pineda-Maldonado, Respondent's Declaration Record 171 notes that he did have a debt. The gang was demanding that he needed to pay $13,000 that he did not pay. And subsequent to that, he began receiving the threats against his family members. The text messages, this is, again, referenced in the declaration. The text messages stated that they would have to do what he wanted or they would hurt the female petitioner. In the record that we do have from the testimony, female petitioner notes we have on record 116. What did the gang members indiscernible? If he didn't cooperate, meaning male petitioner, if he didn't indiscernible with our boy are going to kill me or the boy. So again, we have in the record direct references that this familial membership was a basis for the threats that were made against. She doesn't mention the fact that she has a familial tie there. She says me or the boy. She doesn't say his child. Well, I believe that the reference to the family is contained in the declarations as well. So this is just elaborating on the fact that the boy here is clearly, you know, male petitioner's child. On this point, the government cites Aguilar de Leon versus Sessions as an analogous case or decision from 2018. I am not aware of the holdings there, but I would note that the factual record here indicates that the family motivation is well tied to an ultimate end of, you know, gaining the debt that they felt that they were owed. It's clear that the threats that were made against the female petitioner and would be ongoing were they forced to return were because of the close familial relationship. So as, you know, as counsels have noted, there's no challenge to the nexus determination as to the financial motivations. Substantial evidence, however, did support a finding that both male petitioner, that the gangs targeted him centrally because he was a business owner, but as well that there is a fear of future persecution based on familial membership for the female petitioner. It was not addressed by the board.